**FILED**

**MARCH 28, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## UNITES STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| FH Partners Investments, LLC, a Texas Limited Liability Company, | ) ) ) | |
| Plaintiff, | ) ) | No. |
| vs. | ) ) | |
| Chicago Title Land Trust Company, as Trustee under Trust No. 1095500 Dated September 1, 1990, Basil C. Anagnos; Tina L. Anagnos, his wife, | ) ) ) ) ) | |
| Defendants. | ) | |

**08 C 1815**

**JUDGE KENNELLY**
**MAGISTRATE JUDGE NOLAN**

### COMPLAINT

Plaintiff FH Partners Investments, LLC, by and through its attorneys, McKenna Storer,  files this Complaint against CHICAGO TITLE LAND TRUST COMPANY, an Illinois corporation, Basil C. Anagnos, Tina L. Anagnos, Defendants. In support of this Complaint, Plaintiff states as follows:

### JURISDICTION AND GENERAL ALLEGATIONS

1.      Plaintiff is a limited liability company organized under the laws of Texas and having its principal place of business in the state of Texas; Defendants are citizens of states other than Texas. The amount in controversy, exclusive of interest and costs, exceeds the sum specified by 28 U.S.C. sec. 1332(a)(1).

2.      Plaintiff FH Partners Investments, LLC ("Plaintiff") is a Texas Limited Liability Company with its principal place of business in Waco, Texas.

3.      Defendant Chicago Title Land Trust Company, ("CTLT") is an Illinois corporation with its principal place of business at 171 N. Clark Street, Chicago, Illinois, 60601.

4.      Defendant Basil C. Anagnos is an individual who resides in the state of

Illinois.

5.    Defendant Tina L. Anagnos is an individual who resides in the state of Illinois.


**COUNT I**
**COMPLAINT TO FORECLOSE**
**MORTGAGE**

1.    Plaintiff, FH Partners Investments, LLC a Texas Limited Liability Company, by and through its attorneys, McKenna Storer, files this Complaint to foreclose the Mortgage (or other conveyance in the nature of a mortgage) (hereinafter called "Mortgage") hereinafter described, pursuant to *735 ILCS 5/15-1504* and joins the following person(s) as Defendant(s):

    a.    Basil C. Anagnos

    b.    Tina L. Anagnos

    c.    Chicago Title Land Trust Company as Trustee under Trust No. 109550

2.    Attached as Exhibit "A" is a copy of the First Mortgage ("Mortgage") dated June 14, 1996 and recorded as document 3842268 in Lake County, Illinois; Attached as Exhibit "B" is a copy of the Modification of Mortgage ("First Modification") dated April 21, 1997 and recorded as document 3979537 in Lake County, Illinois; Attached as Exhibit "C" is a Modification of Mortgage ("Second Modification") dated April 8, 1998 and recorded as document 4122124 in Lake County, Illinois; Attached as Exhibit "D" is the Promissory Note ("Original Note") secured thereby dated June 14, 2002; Attached as Exhibit "E" is a copy of the Assignment of Mortgage ("Assignment") to Plaintiff dated September 27, 2007

and recorded as document 6305712 in Lake County, Illinois.

3.    **Information concerning First Mortgage**:

A.    Nature of instrument:  Mortgage

B.    Date of Mortgage: June 14, 1996

C.    Name or names of mortgagor or mortgagors: Basil C. Anagnos

D.    Name of Mortgagee, Trustee or Grantee in Mortgage:

    1.    FH Partners Investments, LLC, a Texas Limited Liability Company as Assignee of First Bank, a Missouri Banking Corporation in the Assignment of Mortgage ("Assignment") to Plaintiff dated September 27, 2007 and recorded as document 6305712 in Lake County, Illinois, and attached as Exhibit "E".

E.    Date and place of recording:    The Mortgage was recorded in the Office of the Recorder of Deeds in Lake County, Illinois on June 25, 1996.

F.    Identification of recording:  Document No. 3842268.

G.    Interest subject to the Mortgage:  Fee simple title conveyed as security.

H.    Amount of original indebtedness, including subsequent advances made under the mortgage:  $314,635.77.

I.    Legal description and common street address of the mortgaged premises:

Street Address:  1100 W. Windhaven Court, Lake Forest, IL 60045

Legal Description:

Lot 75 in Arbor Ridge Subdivision, being a Subdivision of part of the North East 1/4, the South East 1/4 and the South West 1/4 of Section 7, Township 43 North, Range 12, East of the Third Principal Meridian, According to the Plat thereof recorded July 28, 1988 as Document Number 2705749, in Lake County, Illinois.

The subject parcel is commonly known as:

**1100 W. Windhaven Court
Lake Forest, IL 60045**

Permanent Index Number:    **16-07-208-007**

J.    Statements as to defaults:

1.    Mortgagors have not paid the monthly installments of principal, interest, taxes and/or insurance for September 2007 through the present, and the secured note is in default and arrears in the total amount of $16,161.53.

2.    The current unpaid principal balance is $304,496.27.

3.    The total amount now due is $ 345,552.63 as of March17, 2008, plus interest accrued thereafter, court costs, title costs, and Plaintiff's attorneys' fees.

4.    The per diem interest accruing under the Mortgage after default is $67.02.

By reason of said default, Plaintiff has declared the full balance immediately due and payable.  Interest continues to accrue on said balance.

K.    Name of names of present owner or owners of premises:

1.    Chicago Title Land Trust Company, as Trustee under Trust No. 1095500 Dated September 1, 1990.

L.    Name or names of persons claimed to be personally liable for deficiency, if a deficiency judgment is prayed for:

1.    Basil C. Anagnos

M.    Capacity in which Plaintiff brings this suit: FH Partners Investments, LLC is the legal owner and holder of the Note and Mortgage herein, as Assignee of the Mortgage in the Assignment of Mortgage dated September 27, 2007 from First Bank, a Missouri banking corporation.  The beneficial interest of trust 1095500 was collaterally assigned in July 1993 to Maywood Proviso State Bank.  The successor in Interest to Maywood Proviso State Bank was Continental Community Bank and Trust

Company, and First Bank was, in turn Successor in Interest to Continental Community Bank.

N.   Facts in support of redemption period, if sought:
None at the time of the filing of this complaint. However, should the mortgaged real estate become abandoned during the pendency of this foreclosure, it is requested that the court make a finding of abandonment and shorten the redemption period.

O.   Statement that the right of redemption has been waived by all owners of redemption, if applicable:

   1.   None known at this time.

P.   Facts in support of request for attorney's fees and of costs and expenses: Pursuant to the terms of the Note and Mortgage, the mortgagors have obliged themselves to pay for the attorneys' fees, court costs, title costs, and other expenses which Plaintiff has been and will be required to expend in the prosecution of this foreclosure.

Q.   Facts in support of a request for appointment of Mortgagee in possession or for appointment of receiver, and identity of such receiver, if sought:

   1.   None known at this time.

R.   Offer to mortgagor in accordance with *Section 15-1402* to accept title to the real estate in satisfaction of all indebtedness and obligations secured by the Mortgage without judicial sale: None at this time.

S.   Facts in support of possession of the premises upon sale confirmation: Basil C. Anagnos and Tina L. Anagnos are currently in possession of the mortgaged real estate and their right to possess the mortgaged real estate is sought to be terminated herein.

The Plaintiff or the purchaser at the sale or the holder of the certificate of sale or deed is entitled to possession of the premises after the 30th day after the foreclosure sale is confirmed; that the order confirming the sale shall, pursuant to S*ection 15-1508(b) of the Illinois Mortgage Foreclosure Law (Ill. Rev. Stat. 1987, Ch. 110, Par. 15-1508(b))*, include an award of

possession of the real estate as of the date 30 days after the entry of the order; that said order shall further provide, pursuant to *Section 15-701(d) of the Illinois Mortgage Foreclosure Law (Ill. Rev. Stat. 1987, Ch. 110, Par. 15-701(d))*, that the sheriff may execute upon this order and evict you from the real estate without further notice or order of this Court.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff requests:

A.    A judgment of foreclosure and sale;
B.    An order granting a shortened redemption period, if sought;
C.    A personal judgment for a deficiency, if sought;
D.    An order granting possession of the premises effective 30 days after entry of the order confirming the Sheriff's Sale and evicting any remaining occupants without notice;
E.    An order placing the Mortgagee in possession or appointing a receiver, if sought;
F.    A judgment for attorneys' fees, costs and expenses, if sought;
G.    Such other and further relief as equity may require.

**FH Partners Investments, LLC**
**McKenna, Storer, Rowe, White & Farrug**
Attorneys for Plaintiff

By:    /s/ James Fine, One of Its Attorneys

McKenna Storer
James Fine
ARDC #3128684
Attorneys for Plaintiff
666 Russel Court - Suite 303
Woodstock, IL 60098
815-334-9693

f:\word\56208\Complaint for Foreclosure.wpd

3842268

Filed for Record in:
LAKE COUNTY, IL
FRANK J. NUSTRA-RECORDER
On Jun 25 1996
At 4:10pm
Receipt #: 23001
Doc/Type : MTG
Deputy - Cashier #3

**WHEN RECORDED MAIL TO:**
Maywood–Proviso State Bank
411 Madison Street
P.O Box 518
Maywood, IL 60153

**FOR RECORDER'S USE ONLY**

RLT TITLE # 82246

**REAL ESTATE INDEX**
1820 RIDGE AVE
EVANSTON, IL 60201

This Mortgage prepared by:    Maywood Proviso State Bank
                             411 Madison Street
                             Maywood, Il 60153

## MORTGAGE

**THIS MORTGAGE IS DATED JUNE 14, 1996, between THE CHICAGO TITLE AND TRUST COMPANY, whose address is 171 NORTH CLARK STREET, CHICAGO, IL 60601–3294 (referred to below as "Grantor"); and Maywood–Proviso State Bank, whose address is 411 Madison Street, P.O Box 518, Maywood, IL 60153 (referred to below as "Lender").**

**GRANT OF MORTGAGE. For valuable consideration, Grantor not personally but as Trustee under the provisions of a deed or deeds in trust duly recorded and delivered to Grantor pursuant to a Trust Agreement dated September 1, 1990 and known as TRUST #1095500, mortgages and conveys to Lender** all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **located in COOK County, State of Illinois (the "Real Property"):**

LOT 75 IN ARBOR RIDGE SUBDIVISION, BEING A SUBDIVISION OF PART OF THE NORTHEAST 1/4, THE SOUTHEAST 1/4 AND THE SOUTHWEST 1/4 OF SECTION 7, TOWNSHIP 43 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN ACCORDING TO THE PLAT THEREOF RECORDED JULY 28, 1988 AS DOCUMENT NUMBER 2705749, IN LAKE COUNTY, ILLINOIS.

**The Real Property or its address is commonly known as 1100 WINDHAVEN COURT, LAKE FOREST, IL 60045–4609.** The Real Property tax identification number is 16–07–208–007–0000.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**DEFINITIONS.** The following words shall have the following meanings when used in this Mortgage. Terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code. All references to dollar amounts shall mean amounts in lawful money of the United States of America.

**Credit Agreement.** The words "Credit Agreement" mean the revolving line of credit agreement dated June 14, 1996, between Lender and Grantor **with a credit limit of $270,000.00**, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the Credit Agreement. The interest rate under the Credit Agreement is a variable interest rate based upon an index. The index currently is

**EXHIBIT A**

# MORTGAGE
## (Continued)

8.250% per annum. The Credit Agreement has tiered rates and the rate that applies to Grantor depends on Grantor's outstanding account balance. The interest rate to be applied to the outstanding account balance shall be at a rate 1.000 percentage points above the index for balances of $24,999.99 and under and at a rate 0.500 percentage points above the index for balances of $25,000.00 and above, subject however to the following minimum and maximum rates. Under no circumstances shall the interest rate be less than 6.000% per annum or more than the lesser of 18.000% per annum or the maximum rate allowed by applicable law.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described below in the Existing Indebtedness section of this Mortgage.

**Grantor.** The word "Grantor" means **THE CHICAGO TITLE AND TRUST COMPANY, Trustee under that certain Trust Agreement dated September 1, 1990 and known as TRUST #1095500. The Grantor is the mortgagor under this Mortgage.**

**Guarantor.** The word "Guarantor" means and includes without limitation each and all of the guarantors, sureties, and accommodation parties in connection with the Indebtedness.

**Improvements.** The word "Improvements" means and includes without limitation all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal and interest payable under the Credit Agreement and any amounts expended or advanced by Lender to discharge obligations of Grantor or expenses incurred by Lender to enforce obligations of Grantor under this Mortgage, together with interest on such amounts as provided in this Mortgage. **Specifically, without limitation, this Mortgage secures a revolving line of credit and shall secure not only the amount which Lender has presently advanced to Grantor under the Credit Agreement, but also any future amounts which Lender may advance to Grantor under the Credit Agreement within twenty (20) years from the date of this Mortgage to the same extent as if such future advance were made as of the date of the execution of this Mortgage. The revolving line of credit obligates Lender to make advances to Grantor so long as Grantor complies with all the terms of the Credit Agreement and Related Documents. At no time shall the principal amount of Indebtedness secured by the Mortgage, not including sums advanced to protect the security of the Mortgage, exceed $270,000.00.**

**Lender.** The word "Lender" means Maywood–Proviso State Bank, its successors and assigns. The Lender is the mortgagee under this Mortgage.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender, and includes without limitation all assignments and security interest provisions relating to the Personal Property and Rents.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the property, interests and rights described above in the "Grant of Mortgage" section.

**Related Documents.** The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (1) PAYMENT OF THE INDEBTEDNESS AND  (2)**

# MORTGAGE
## (Continued)

PERFORMANCE OF ALL OBLIGATIONS OF GRANTOR UNDER THIS MORTGAGE AND THE RELATED DOCUMENTS. THIS MORTGAGE IS INTENDED TO AND SHALL BE VALID AND HAVE PRIORITY OVER ALL SUBSEQUENT LIENS AND ENCUMBRANCES, INCLUDING STAUTORY LIENS, EXCEPTING SOLELY TAXES AND ASSESSMENTS LEVIED ON THE REAL PROPERTY, TO THE EXTENT OF THE MAXIMUM AMOUNT SECURED HEREBY. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due, and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until in default, Grantor may remain in possession and control of and operate and manage the Property and collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Hazardous Substances.** The terms "hazardous waste," "hazardous substance," "disposal," "release," and "threatened release," as used in this Mortgage, shall have the same meanings as set forth in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99–499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or Federal laws, rules, or regulations adopted pursuant to any of the foregoing. The terms "hazardous waste" and "hazardous substance" shall also include, without limitation, petroleum and petroleum by–products or any fraction thereof and asbestos. Grantor represents and warrants to Lender that: (a) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any hazardous waste or substance by any person on, under, about or from the Property; (b) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (i) any use, generation, manufacture, storage, treatment, disposal, release, or threatened release of any hazardous waste or substance on, under, about or from the Property by any prior owners or occupants of the Property or (ii) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (c) Except as previously disclosed to and acknowledged by Lender in writing, (i) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of, or release any hazardous waste or substance on, under, about or from the Property and (ii) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation those laws, regulations, and ordinances described above. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for hazardous waste and hazardous substances. Grantor hereby (a) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws, and (b) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), soil, gravel or rock products without the prior written consent of Lender.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without the prior written consent of Lender. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and its agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

3814 2268

06-14-1996

**MORTGAGE**
(Continued)

Page 4

---

**Duty to Protect.** Grantor agrees neither to abandon nor leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE – CONSENT BY LENDER.** Lender may, at its option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without the Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest therein; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of Real Property interest. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Illinois law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are a part of this Mortgage.

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Mortgage, except for the lien of taxes and assessments not due, except for the Existing Indebtedness referred to below, and except as otherwise provided in the following paragraph.

**Right To Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property at any time become located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, to the extent such insurance is required by Lender and is or becomes available, for the term of the loan and for the full unpaid principal balance of the loan, or the maximum limit of coverage that is available, whichever is less.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at its election, apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default hereunder. Any proceeds which have not been disbursed within 180 days after their

**MORTGAGE**
(Continued)

receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to prepay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor.

**Unexpired Insurance at Sale.** Any unexpired insurance shall inure to the benefit of, and pass to, the purchaser of the Property covered by this Mortgage at any trustee's sale or other sale held under the provisions of this Mortgage, or at any foreclosure sale of such Property.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Mortgage, to the extent compliance with the terms of this Mortgage would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Mortgage for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (a) the name of the insurer; (b) the risks insured; (c) the amount of the policy; (d) the property insured, the then current replacement value of such property, and the manner of determining that value; and (e) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**EXPENDITURES BY LENDER.** If Grantor fails to comply with any provision of this Mortgage, including any obligation to maintain Existing Indebtedness in good standing as required below, or if any action or proceeding is commenced that would materially affect Lender's interests in the Property, Lender on Grantor's behalf may, but shall not be required to, take any action that Lender deems appropriate. Any amount that Lender expends in so doing will bear interest at the rate provided for in the Credit Agreement from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses, at Lender's option, will (a) be payable on demand, (b) be added to the balance of the credit line and be apportioned among and be payable with any installment payments to become due during either (i) the term of any applicable insurance policy or (ii) the remaining term of the Credit Agreement, or (c) be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity. This Mortgage also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of the default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage.

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**EXISTING INDEBTEDNESS.** The following provisions concerning existing indebtedness (the "Existing Indebtedness") are a part of this Mortgage.

**Existing Lien.** The lien of this Mortgage securing the Indebtedness may be secondary and inferior to an existing lien. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Mortgage by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to condemnation of the Property are a part of this Mortgage.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award.

Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments as may be requested by it from time to time to permit such participation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (a) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (b) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (c) a tax on this type of Mortgage chargeable against the Lender or the holder of the Credit Agreement; and (d) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default (as defined below), and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (a) pays the tax before it becomes delinquent, or (b) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage.

**Security Agreement.** This instrument shall constitute a security agreement to the extent any of the Property constitutes fixtures or other personal property, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall assemble the Personal Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party), from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code), are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY–IN–FACT.** The following provisions relating to further assurances and attorney–in–fact are a part of this Mortgage.

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (a) the obligations of Grantor under the Credit Agreement, this Mortgage, and the Related Documents, and (b) the liens and security interests created by this Mortgage on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or agreed to the contrary by Lender in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney–in–Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney–in–fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, terminates the credit line account, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time. If, however, payment is made by Grantor, whether voluntarily or otherwise, or by guarantor or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment (a) to Grantor's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, (b) by reason of any judgment, decree or order of any court or administrative body having jurisdiction over Lender or any of Lender's property, or (c) by reason of any settlement or comprise of any claim made by Lender with any claimant (including without limitation Grantor), the Indebtedness shall be considered unpaid for the purpose of

Case 1:08-cv-01815   Document 1   Filed 03/28/2008   Page 13 of 33

# MORTGAGE
## (Continued)

enforcement of this Mortgage and this Mortgage shall continue to be effective or shall be reinstated, as the case may be, notwithstanding any cancellation of this Mortgage or of any note or other instrument or agreement evidencing the Indebtedness and the Property will continue to secure the amount repaid or recovered to the same extent as if that amount never had been originally received by Lender, and Grantor shall be bound by any judgment, decree, order, settlement or compromise relating to the Indebtedness or to this Mortgage.

**DEFAULT.** Each of the following, at the option of Lender, shall constitute an event of default ("Event of Default") under this Mortgage: (a) Grantor commits fraud or makes a material misrepresentation at any time in connection with the credit line account. This can include, for example, a false statement about Grantor's income, assets, liabilities, or any other aspects of Grantor's financial condition. (b) Grantor does not meet the repayment terms of the credit line account. (c) Grantor's action or inaction adversely affects the collateral for the credit line account or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a lien on the dwelling without Lender's permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Lender, at its option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney–in–fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Mortgagee in Possession.** Lender shall have the right to be placed as mortgagee in possession or to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The mortgagee in possession or receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Credit Agreement or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition.

**Waiver; Election of Remedies.** A waiver by any party of a breach of a provision of this Mortgage shall not constitute a waiver of or prejudice the party's rights otherwise to demand strict compliance with that provision or any other provision. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or take action to perform an obligation of Grantor under this Mortgage after failure of Grantor to perform shall not affect Lender's right to declare a default and exercise its remedies under this Mortgage.

**Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable. Whether or not any court action is involved, all reasonable expenses incurred by Lender that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest from the date of expenditure until repaid at the rate provided for in the Credit Agreement. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's legal expenses whether or not there is a lawsuit, including expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and

38 12268

any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES TO GRANTOR AND OTHER PARTIES.** Any notice under this Mortgage, including without limitation any notice of default and any notice of sale to Grantor, shall be in writing, may be be sent by telefacsimilie, and shall be effective when actually delivered, or when deposited with a nationally recognized overnight courier, or, if mailed, shall be deemed effective when deposited in the United States mail first class, certified or registered mail, postage prepaid, directed to the addresses shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Applicable Law. This Mortgage has been delivered to Lender and accepted by Lender in the State of Illinois. This Mortgage shall be governed by and construed in accordance with the laws of the State of Illinois.**

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Multiple Parties; Corporate Authority.** All obligations of Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor. This means that each of the persons signing below is responsible for all obligations in this Mortgage.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Mortgage in all other respects shall remain valid and enforceable.

**Successors and Assigns.** Subject to the limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Illinois as to all Indebtedness secured by this Mortgage.

**Waivers and Consents.** Lender shall not be deemed to have waived any rights under this Mortgage (or under the Related Documents) unless such waiver is in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by any party of a provision of this Mortgage shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or any of Grantor's obligations as to any future transactions. Whenever consent by Lender is required in this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required.

**GRANTOR'S LIABILITY.** This Mortgage is executed by Grantor, not personally but as Trustee as provided above in the exercise of the power and the authority conferred upon and vested in it as such Trustee (and Grantor thereby warrants that it possesses full power and authority to execute this instrument). It is expressly understood and agreed that with the exception of the foregoing warranty, notwithstanding anything to the contrary contained herein, that each and all of the warranties, indemnities, representations, covenants, undertakings, and agreements made in this Mortgage on the part of Grantor, while in form purporting to be the warranties, indemnities, representations, covenants, undertakings, and agreements of Grantor, are nevertheless each and every one of them made and intended not as personal warranties, indemnities, representations, covenants, undertakings, and

06-14-1996                          **MORTGAGE**                          Page 9
                                    (Continued)

agreements by Grantor or for the purpose or with the intention of binding Grantor personally, and nothing in this Mortgage or in the Credit Agreement shall be construed as creating any liability on the part of Grantor personally to pay the Credit Agreement or any interest that may accrue thereon, or any other Indebtedness under this Mortgage, or to perform any covenant, undertaking, or agreement, either express or implied, contained in this Mortgage, all such liability, if any, being expressly waived by Lender and by every person now or hereafter claiming any right or security under this Mortgage, and that so far as Grantor and its successors personally are concerned, the legal holder or holders of the Credit Agreement and the owner or owners of any Indebtedness shall look solely to the Property for the payment of the Credit Agreement and Indebtedness, by the enforcement of the lien created by this Mortgage in the manner provided in the Credit Agreement and herein or by action to enforce the personal liability of any Guarantor or obligor, other than Grantor, on the Credit Agreement.

**THE CHICAGO TITLE AND TRUST COMPANY ACKNOWLEDGES HAVING READ ALL OF THE PROVISIONS OF THIS MORTGAGE AND NOT PERSONALLY, BUT AS TRUSTEE AS PROVIDED ABOVE, HAS CAUSED THIS MORTGAGE TO BE SIGNED BY ITS DULY AUTHORIZED OFFICERS AND ITS CORPORATE SEAL TO BE HEREUNTO AFFIXED.**

**GRANTOR:**

THE CHICAGO TITLE AND TRUST COMPANY



By: _____     _____
        Asst. Vice President                        KAREN MICHEL

By: _____
        Asst. Secretary

---

## CORPORATE ACKNOWLEDGMENT

STATE OF ___ILLINOIS_____ )
                                              ) ss
COUNTY OF _____COOK_____ )

On this ___14th___ day of ____June____ , 19 __96__, before me, the undersigned Notary Public, personally appeared _____KAREN MICHEL_____ , _____Asst. Vice President_____ ; and _____Nancy Ekstrom_____ , _____Asst. Secretary_____ of THE CHICAGO TITLE AND TRUST COMPANY, and known to me to be authorized agents of the corporation that executed the Mortgage and acknowledged the Mortgage to be the free and voluntary act and deed of the corporation, by authority of its Bylaws or by resolution of its board of directors, for the uses and purposes therein mentioned, and on oath stated that they are authorized to execute this Mortgage and in fact executed the Mortgage on behalf of the corporation.

By _Marylou Estrada_____     Residing at _____

Notary Public in and for the State of ___Illinois_____

My commission expires _____

"OFFICIAL SEAL"
Marylou Estrada
Notary Public, State of Illinois
My Commission Expires 3/12/99

---

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.21 (c) 1996 CFI ProServices, Inc.  All rights reserved.
[IL-G03 BANAGNOS.LN L1.OVL]

3S 42268

OFFICIAL
Marylou
Notary Public,
My Commission

EXECUTION WITH EXCULPATORY CLAUSE FOR THE CHICAGO TRUST COMPANY, TRUSTEE UNDER TRUST # _10-95500_  ATTACHED TO THAT _AGREEMENT_
DATED _6/14/96_  TO/WITH _MAYWOOD PROVISO STATE BANK_

It is expressly understood and agreed by and between the parties hereto, anything to the contrary notwithstanding, that each and all of the warranties, indemnities, representations, covenants, undertakings and agreements herein made on the part of the Trustee while in form purporting to be the warranties, indemnities, representations, covenants, undertakings and agreements of said Trustee are nevertheless each and every one of them, made and intended not as personal warranties, indemnities, representations, covenants, undertakings and agreements by the Trustee or for the purpose or with the intention of binding said Trustee personally but are made and intended for the purpose of binding only that portion of the trust property specifically described herein, and this instrument is executed and delivered by said Trustee not in its own right, but solely in the exercise of the powers conferred upon it as such Trustee; and that no personal liability or personal responsibility is assumed by nor shall at any time be asserted or enforceable against The Chicago Trust Company, on account of this instrument or on account of any warranty, indemnity, representation, covenant or agreement of the said Trustee in this instrument contained, either expressed or implied, all such personal liability, if any, being expressly waived and released.

IN WITNESS WHEREOF, The Chicago Trust Company, not personally, but as Trustee as aforesaid, has caused these presents to be signed by its Assistant Vice President, and its corporate seal to be nereunto affixed and attested by its Assistant Secretary, the day and year first above written.

DATE                                          The Chicago Trust Company,
                                              as Trustee aforesaid and
                                                    not personally,

                                          By: _____
                                                Assistant Vice President

Corporate Seal                            Attest: _____
                                                Assistant Secretary

**3979537**

Filed for Record in:
LAKE COUNTY, IL
MARY ELLEN VANDERVENTER - RECORDER
On  Jun 11 1997
At  3:55pm
Receipt #:    57685
Doc/Type :      AGR
Deputy - Cashier #4

WHEN RECORDED MAIL TO:
Maywood–Proviso State Bank
411 Madison Street
P.O Box 518
Maywood, IL  60153

REAL ES
1820 R
Evanston, IL

**FOR RECORDER'S USE ONLY**

This Modification of Mortgage prepared by:     mail to
                                               A. Guice
                                               Maywood Proviso State Bank
                                               411 Madison Street
                                               Maywood, Il 60153

REI TITLE SERVICES #   5007476

## MODIFICATION OF MORTGAGE

THE CHICAGO TRUST COMPANY

THIS MODIFICATION OF MORTGAGE IS DATED APRIL 21, 1997, BETWEEN THE CHICAGO TITLE AND TRUST COMPANY, as Trustee, (referred to below as "Grantor"), whose address is 171 NORTH CLARK STREET, CHICAGO, IL  60601–3294; and Maywood–Proviso State Bank (referred to below as "Lender"), whose address is 411 Madison Street, P.O Box 518, Maywood, IL  60153.

MORTGAGE.  Grantor and Lender have entered into a mortgage dated June 14, 1996 (the "Mortgage") recorded in LAKE County, State of Illinois as follows:

Mortgage recorded June 25, 1996 in Lake County, State of Illinois as document #3842268.

REAL PROPERTY DESCRIPTION.    The Mortgage covers the following described real property (the "Real Property") located in LAKE County, State of Illinois:

LOT 75 IN ARBOR RIDGE SUBDIVISION, BEING A SUBDIVISION OF PART OF THE NORTHEAST 1/4, THE SOUTHEAST 1/4 AND THE SOUTHWEST 1/4 OF SECTION 7, TOWNSHIP 43 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN ACCORDING TO THE PLAT THEREOF RECORDED JULY 28, 1988 AS DOCUMENT NUMBER 2706749, IN LAKE COUNTY, ILLINOIS.

The Real Property or its address is commonly known as 1100 WINDHAVEN COURT, LAKE FOREST, IL 60045–4609.  The Real Property tax identification number is 16–07–208–007–0000.

MODIFICATION.  Grantor and Lender hereby modify the Mortgage as follows:

Increase Principal amount from $270,000.00 to $300,000.00.

CONTINUING VALIDITY.  Except as expressly modified above, the terms of the original Mortgage shall remain unchanged and in full force and effect.  Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Mortgage as changed above nor obligate Lender to make any future modifications.  Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Mortgage (the "Note").  It is the intention of Lender to retain as liable all parties to the Mortgage and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing.  Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification.  If any person who signed the original Mortgage does not sign this Modification, then all persons signing below acknowledge that this Modification is given conditionally, based on the representation to Lender that the non-signing person consents to the changes and provisions of this Modification or otherwise will not be released by it.  This waiver applies not only to any initial extension or modification, but also to all such subsequent actions.

EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF MORTGAGE, AND EACH GRANTOR AGREES TO ITS TERMS.  BORROWER IS EXECUTING THIS MODIFICATION, NOT PERSONALLY, BUT AS TRUSTEE UNDER THE TRUST AGREEMENT DESCRIBED AS TRUST #1095500 AND DATED SEPTEMBER 1, 1990.

BORROWER:  THE CHICAGO TRUST COMPANY, formerly

THE CHICAGO TITLE AND TRUST COMPANY

SEE ATTACHED EXCULPATORY
By:        CLAUSE FOR SIGNATURE

By:

# EXHIBIT B

04-21-1997                    **MODIFICATION OF MORTGAGE**                    Page 2
                                    (Continued)

**LENDER:**

Maywood-Proviso State Bank

By: _____
      **Authorized Officer**

---

## CORPORATE ACKNOWLEDGMENT

**STATE OF** _____ Illinois _____ )
                                                          ) **ss**
**COUNTY OF** _____ Cook _____            )

On this ___1st___ day of ___May___ , 19 _97_ , before me, the undersigned Notary Public, personally appeared _____ , _____ and _____ , _____ **of THE CHICAGO TITLE AND TRUST COMPANY**, and known to me to be authorized agents of the corporation that executed the Modification of Mortgage and acknowledged the Modification to be the free and voluntary act and deed of the corporation, by authority of its Bylaws or by resolution of its board of directors, for the uses and purposes therein mentioned, and on oath stated that they are authorized to execute this Modification and in fact executed the Modification on behalf of the corporation.

By _____SEE ATTACHED EXCULPATORY CLAUSE FOR_____     Residing at _____
          SIGNATURE AND NOTARY

Notary Public in and for the State of _____ Illinois _____

My commission expires _____ 4/8/98 _____

---

## LENDER ACKNOWLEDGMENT

**STATE OF** _____ Illinois _____ )
                                          ) **ss**
**COUNTY OF** _____ Cook _____     )

On this ___4th___ day of ___April___ , 19 ____ , before me, the undersigned Notary Public, personally appeared _____George M. Luck_____ and known to me to be the ___Vice President___ authorized agent for the Lender that executed the within and foregoing instrument and acknowledged said instrument to be the free and voluntary act and deed of the said Lender, duly authorized by the Lender through its board of directors or otherwise, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this said instrument and that the seal affixed is the corporate seal of said Lender.

By _____     Residing at _____411 Madison Street_____
                                                       Maywood, IL 60153

Notary Public in and for the State of _____ Illinois _____

My commission expires _____

---

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.23 (c) 1997 CFI ProServices, Inc.  All rights reserved.
[IL-G201 BANAGNOS.LN L1.OVL]

**EXECUTION WITH EXCULPATORY CLAUSE FOR THE CHICAGO TRUST COMPANY, TRUSTEE UNDER TRUST #** 1095500 **ATTACHED TO THAT** Modification of Mortgage **DATED** April 21, 1997 **TO** Maywood-Proviso State Bank .

It is expressly understood and agreed by and between the parties hereto, anything to the contrary notwithstanding, that each and all of the warranties, indemnities, representations, covenants, undertakings and agreements herein made on the part of the Trustee while in form purporting to be the warranties, indemnities, representations, covenants, undertakings and agreements of said Trustee are nevertheless each and every one of them, made and intended not as personal warranties, indemnities, representations, covenants, undertakings and agreements by the Trustee or for the purpose or with the intention of binding said Trustee personally but are made and intended for the purpose of binding only that portion of the trust property specifically described herein, and this instrument is executed and delivered by said Trustee not in its own right, but solely in the exercise of the powers conferred upon it as such Trustee; and that no personal liability or personal responsibility is assumed by nor shall at any time be asserted or enforceable against The Chicago Trust Company, on account of this instrument or on account of any warranty, indemnity, representation, covenant or agreement of the said Trustee in this instrument contained, either expressed or implied, all such personal liability, if any, being expressly waived and released.

IN WITNESS WHEREOF, The Chicago Trust Company, not personally, but as Trustee as aforesaid, has caused these presents to be signed by its Assistant Vice President, and its corporate seal to be hereunto affixed and attested by its Assistant Secretary, the day and year first above written.

DATE May 1, 1997

The Chicago Trust Company,
as Trustee aforesaid and not personally,

By: _____
Assistant Vice President

Attest: _____
Assistant Secretary

STATE OF ILLINOIS )
 )
COUNTY OF COOK ) SS.

I, the undersigned, a Notary Public in and for the County and State aforesaid, DO HEREBY CERTIFY, that the above named Assistant Vice President and Assistant Secretary of The Chicago Trust Company, personally known to me to be the same persons whose names are subscribed to the foregoing instrument as such Assistant Vice President and Assistant Secretary respectively, appeared before me this day in person and acknowledged that they signed and delivered the said instrument as their own free and voluntary act and as the free and voluntary act of said Company for the uses and purposes therein set forth; and the said Assistant Secretary then and there acknowledged that said Assistant Secretary, as custodian of the corporate seal of said Company, caused the corporate seal of said Company to be affixed to said instrument as said Assistant Secretary's own free and voluntary act and as the free and voluntary act of said Company for the uses and purposes therein set forth.

Given under my hand and Notarial Seal this 1st day of May 1997.

"OFFICIAL SEAL"
TEREBA WESCLITZ
Notary Public, State of Illinois
My Commission Expires 4/8/98
Notarial Seal

A:\NOTARY.LTR

3

REAL ESTATE INDEX
1820 RIDGE AVE
EVANSTON, IL 60201

4122124

WHEN RECORDED MAIL TO:
Continental Community Bank and
Trust Company
411 Madison Street
P.O Box 518
Maywood, IL 60153

EVANSTON, IL 60201

Filed for Record in:
LAKE COUNTY, IL
MARY ELLEN VANDERVENTER - RECORDER
On  Apr 22 1998
At  8:51am
Receipt #:        103972
Doc/Type :          MTG
Deputy - Cashier #2

**FOR RECORDER'S USE ONLY**

---

This Modification of Mortgage prepared by:    **Continental Community Bank and Trust Co.**
411 Madison Street
Maywood, Il 60153

---

## MODIFICATION OF MORTGAGE

THIS MODIFICATION OF MORTGAGE IS DATED APRIL 8, 1998, BETWEEN THE CHICAGO TITLE AND TRUST COMPANY, as Trustee, (referred to below as "Grantor"), whose address is 171 NORTH CLARK STREET, CHICAGO, IL 60601-3294; and Continental Community Bank and Trust Company (referred to below as "Lender"), whose address is 411 Madison Street, P.O Box 518, Maywood, IL 60153.

**MORTGAGE.** Grantor and Lender have entered into a mortgage dated June 14, 1996 (the "Mortgage") recorded in LAKE County, State of Illinois as follows:

Mortgage recorded June 25, 1996 in Lake County, State of Illinois as document #3842268.

**REAL PROPERTY DESCRIPTION.** The Mortgage covers the following described real property (the "Real Property") located in LAKE County, State of Illinois:

LOT 75 IN ARBOR RIDGE SUBDIVISION, BEING A SUBDIVISION OF PART OF THE NORTHEAST 1/4, THE SOUTHEAST 1/4 AND THE SOUTHWEST 1/4 OF SECTION 7, TOWNSHIP 43 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN ACCORDING TO THE PLAT THEREOF RECORDED JULY 28, 1988 AS DOCUMENT NUMBER 2705749, IN LAKE COUNTY, ILLINOIS.

The Real Property or its address is commonly known as **1100 WINDHAVEN COURT, LAKE FOREST, IL 60045-4609.** The Real Property tax identification number is 16-07-208-007-0000.

**MODIFICATION.** Grantor and Lender hereby modify the Mortgage as follows:

Increase Line of Credit amount from $300,000.00 to $315,000.00.

**CONTINUING VALIDITY.** Except as expressly modified above, the terms of the original Mortgage shall remain unchanged and in full force and effect. Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Mortgage as changed above nor obligate Lender to make any future modifications. Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Mortgage (the "Note"). It is the intention of Lender to retain as liable all parties to the Mortgage and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification. If any person who signed the original Mortgage does not sign this Modification, then all persons signing below acknowledge that this Modification is given conditionally, based on the representation to Lender that the non-signing person consents to the changes and provisions of this Modification or otherwise will not be released by it. This waiver applies not only to any initial extension or modification, but also to all such subsequent actions.

EXHIBIT C

04–08–1998            **MODIFICATION OF MORTGAGE**            Page 2
(Continued)

EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF MORTGAGE, AND EACH GRANTOR AGREES TO ITS TERMS. BORROWER IS EXECUTING THIS MODIFICATION, NOT PERSONALLY, BUT AS TRUSTEE UNDER THE TRUST AGREEMENT DESCRIBED AS TRUST #1095500 AND DATED SEPTEMBER 1, 1990.

**BORROWER:**

**THE CHICAGO TITLE AND TRUST COMPANY**

By: _____
       Lidia Marinca     ASST. VICE PRESIDENT.

By: _____
       KAREN MICHEL     Assistant Secretary

*(THE CHICAGO TRUST COMPANY — CORPORATE SEAL — CHICAGO, ILLINOIS)*

**LENDER:**

**Continental Community Bank and Trust Company**

By: _____
    **Authorized Officer**

---

### CORPORATE ACKNOWLEDGMENT

STATE OF _____ IL _____ )
                                       ) ss

COUNTY OF _____ Cook _____ )

On this _8th_ day of _April_ 19 _98_, before me, the undersigned Notary Public, personally appeared ——————— Lidia Marinca , ASST. VICE PRESIDENT , and ——————— KAREN MICHEL , Assistant Secretary ——————— of THE CHICAGO TITLE AND TRUST COMPANY, and known to me to be authorized agents of the corporation that executed the Modification of Mortgage and acknowledged the Modification to be the free and voluntary act and deed of the corporation, by authority of its Bylaws or by resolution of its board of directors, for the uses and purposes therein mentioned, and on oath stated that they are authorized to execute this Modification and in fact executed the Modification on behalf of the corporation.

By _____     Residing at _____ IL _____

**Notary Public in and for the State of** _____

**My commission expires** _____

*"OFFICIAL SEAL"*
*TEREBA WESCLITZ*
*Notary Public, State of Illinois*
*My Commission Expires 4/8/98*

04–08–1998

# MODIFICATION OF MORTGAGE
## (Continued)

Page 3

## LENDER ACKNOWLEDGMENT

STATE OF ___ILLINOIS_____ )

                                          ) ss

COUNTY OF_____COOK_____ )

On this 8th_____ day of ___April____, 19 98__, before me, the undersigned Notary Public, personally appeared Oscar A. Rodriguez_____ and known to me to be the __Assistant Vice President__, authorized agent for the Lender that executed the within and foregoing instrument and acknowledged said instrument to be the free and voluntary act and deed of the said Lender, duly authorized by the Lender through its board of directors or otherwise, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this said instrument and that the seal affixed is the corporate seal of said Lender.

By _Marcia M. Schams_____  Residing at ___411 Madison St____
                                        Maywood, IL 60153

Notary Public in and for the State of ___Illinois_____

My commission expires __04/14/99_____

> "OFFICIAL SEAL"
> MARCIA M. SCHAMS
> Notary Public, State of Illinois
> My Commission Expires 04/14/99

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.24a (c) 1998 CFI ProServices, Inc.  All rights reserved.
[IL–G201 E3.24 F3.24 BANAGNOS.LN L1.OVL]

4122124

 # PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $314,635.77 | 06-14-2002 | 08-14-2007 | 4100000140 | 500 | 503453 | RGT | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Basil C. Anagnos (SSN: 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)
Chicago Title Land Trust Company, successor Trustee to Chicago Title and Trust Company u/t/a September 1, 1990 and known as Trust Number 1095500
1100 Windhaven Ct.
Lake Forest, IL 60045

**Lender:** Continental Community Bank and Trust Company
2430 W. Indian Trail
Aurora, IL 60506-1568
(630) 907-4500

**Principal Amount: $314,635.77** **Interest Rate: 8.000%** **Date of Note: June 14, 2002**

**PROMISE TO PAY. Basil C. Anagnos; and Chicago Title Land Trust Company, successor Trustee to Chicago Title and Trust Company u/t/a September 1, 1990 and known as Trust Number 1095500 ("Borrower") jointly and severally promise to pay to Continental Community Bank and Trust Company ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Hundred Fourteen Thousand Six Hundred Thirty-five & 77/100 Dollars ($314,635.77), together with interest at the rate of 8.000% per annum on the unpaid principal balance from June 14, 2002, until paid in full.**

**PAYMENT. Borrower will pay this loan in 59 regular payments of $2,308.79 each and one irregular last payment estimated at $301,432.20. Borrower's first payment is due September 14, 2002, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on August 14, 2007, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to accrued unpaid interest, then to principal, and any remaining amount to any unpaid collection costs and late charges. Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year (366 during leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.**

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to Borrower upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Continental Community Bank and Trust Company, 2430 W. Indian Trail, Aurora, IL 60506-1568.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **5.000% of the unpaid portion of the regularly scheduled payment.**

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the interest rate on this Note 4.000 percentage points. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Borrower will be in default under this Note if any of the following happen:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Break Other Promises.** Borrower breaks any promise made to Lender or fails to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan Borrower has with Lender.

**False Statements.** Any representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of Borrower's property; Borrower makes an assignment for the benefit of creditors; or any proceeding is commenced either by Borrower or against Borrower under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the property or any other of Borrower's property in which Lender has a lien. This includes taking of, garnishing of or levying on Borrower's accounts, including deposit accounts, with Lender. However, if Borrower disputes in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if Borrower gives Lender written notice of the claim and furnishes Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Collateral Damage or Loss.** Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW. This Note will be governed by and interpreted in accordance with federal law and the laws of the State of Illinois. This Note has been accepted by Lender in the State of Illinois.**

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by collateral as described by a Mortgage dated June 14, 1996.

**PRIOR NOTE.** A certain Credit Line Change In Terms Agreement dated June 14, 2001 in the original principal amount of $315,000.00 with a maturity date of June 14, 2002.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

**TRUSTEE'S LIABILITY.** This Note is being executed by Chicago Title Land Trust Company not personally but as Trustee in the exercise of the power

EXHIBIT D

**PROMISSORY NOTE**
(Continued)

Loan No: 4100000140

Page 2

liability of any other guarantor, co-borrower, or cosigner of this Note.

**ILLINOIS INSURANCE NOTICE.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in the collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by their agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own.

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:


X _____
Basil C. Anagnos, Individually


CHICAGO TITLE LAND TRUST COMPANY, SUCCESSOR TRUSTEE TO CHICAGO TITLE AND TRUST COMPANY U/T/A SEPTEMBER 1, 1990 AND KNOWN AS TRUST NUMBER 1095500

By: _____
Authorized Signer for Chicago Title Land Trust
Company, successor Trustee to Chicago Title and
Trust Company u/t/a September 1, 1990 and known
as Trust Number 1095500

*[Corporate seal: CHICAGO TITLE LAND TRUST COMPANY, CORPORATE SEAL, CHICAGO, ILLINOIS]*

LASER PRO Lending, Ver. 5.18.50.51 Copr. Harland Financial Solutions, Inc. 1997, 2002. All Rights Reserved. - IL F:\CFI\WIN\CFI\LPL\D20.FC TR-567 PR-16

Payable to the order of FH Partners LLC without recourse, representation or warranty of any kind or nature except as expressly provided in a certain Loan Sale Agreement dated September 27, 2007 between payee and endorser.

FIRST BANK, as successor-in-interest to
Continental Community Bank and Trust Company

By: _____
Brian K. Dickmann, Senior Vice President

Recording requested by, and
after recording, return to:
FH Partners, L.P.
Attn: Credit Administration Dept.
6400 Imperial Drive (Delivery only)
P.O. Box 8216
Waco, Texas 76714-8216

Property Tax Identification Number:
16-07-208-007-0000

Property Address:
1100 Windhaven Court
Lake Forest, IL 60045-4609



Image# 042843560002 Type: ASG
Recorded: 02/14/2008 at 11:08:52 AM
Receipt#: 2008-00007736
Total Amt: $39.00 Page 1 of 2
IL Rental Housing Fund: $10.00
Lake County IL Recorder
Mary Ellen Vanderventer Recorder
File 6305712

*This space reserved for Recorders use only.*

## ASSIGNMENT OF MORTGAGE

This **ASSIGNMENT OF MORTGAGE** (the "Assignment") is made and entered into as of the 27th day of September, 2007 by and between **FIRST BANK**, a Missouri banking corporation, 11901 Olive Boulevard, St. Louis, Missouri 63141, as success-in-interest to Maywood-Proviso State Bank and Continental Community Bank and Trust Company ("Assignor") and **FH PARTNERS, LLC**, a Texas limited liability company having a principal business address at P.O. Box 8216, Waco, TX 76714 ("Assignee").

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor does hereby grant, bargain, sell, assign, transfer and set over unto Assignee, all right, title and interest of Assignor in and to the following:

Mortgage dated June 14, 1996 executed by The Chicago Title and Trust Company, as trustee under the provisions of a Trust Agreement dated September 1, 1990 and known as Trust #1095300, in favor of Assignor, and recorded on June 25, 1996 in the Office of Recorder of Deeds for Lake County, Illinois as Document No. 3842268, as modified by that certain Modification of Mortgage dated April 21, 1997 and recorded on June 11, 1997 as Document No. 3979537, as further modified by that certain Modification of Mortgage dated April 8, 1998 and recorded on April 22, 1998 as Document No. 4122124, as further modified by that certain Modification of Mortgage dated June 14, 2002 and recorded 2-14-08 as Document No. 6305711 (the "Mortgage") all encumbering certain real property located in Lake County, State of Illinois:

**LOT 75 IN ARBOR RIDGE SUBDIVISION, BEING A SUBDIVISION OF PART OF THE NORTHEAST 1/4, THE SOUTHEAST 1/4 AND THE SOUTHWEST 1/4 OF SECTION 7, TOWNSHIP 43 NORTH, RANGE 12,**

EXHIBIT E

File#:6305712

## AFFIDAVIT

The undersigned officer of First Bank, a Missouri banking corporation, hereby swears, certifies and affirms that attached hereto as Exhibit "A" and incorporated herein by this reference is a true and correct copy of the original Modification of Mortgage (the "Modification") dated June 14, 2002, which modifies that certain Mortgage dated June 14, 1996 and recorded on June 25, 1996 as Document number 3842268 with the Office of Recorder of Deeds for Lake County, Illinois executed by Chicago Title Land Trust Company, Successor Trustee to Chicago Title and Trust Company U/T/A September 1, 1990 and known as Trust Number 109550 for the benefit of First Bank, as successor-in-interest to Continental Community Bank and Trust Company ("First Bank").

As of the date of this Affidavit, First Bank has searched its records thoroughly and is unable to locate the original Modification because the same has been lost and/or destroyed. Pursuant to the terms and conditions of the Loan Sale Agreement (the "Loan Sale Agreement") dated of even date herewith by and between First Bank and FH Partners, LLC ("Buyer"), Buyer is lawfully entitled to possession and control of the original Modification.

The undersigned hereby swears, certifies and affirms that the copy of the Modification attached hereto as Exhibit "A" is and will continue to be a true and correct copy of said original Modification and that First Bank has heretofore transferred to Buyer all of its right, title and interest in and to said Modification pursuant to the terms of the Loan Sale Agreement.

Effective as of September 21, 2007.

FIRST BANK, as successor-in-interest to
Continental Community Bank and Trust Company

By: _____
    Brian K. Dickmann, Senior Vice President

[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

Image# 042842330007 Type: AGM
Recorded: 02/14/2008 at 10:49:48 AM
Receipt#: 2008-00007735
Total Amt: $41.00 Page 1 of 7
IL Rental Housing Fund: $10.00
Lake County IL Recorder
Mary Ellen Vanderventer Recorder
File6305711    I

STATE OF MISSOURI )
                  ) SS
COUNTY OF ST. LOUIS )

On this 4 day of December, 2007, before me, a Notary Public in and for the State of Missouri, personally appeared Brian K. Dickmann, being by me duly sworn, did say that he is a Senior Vice President of FIRST BANK, a Missouri banking corporation, and that said instrument was signed in behalf of said corporation by authority of its Board of Directors; and said officer acknowledged said instrument to be the free act and deed of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal in the location aforesaid, the day and year first above written.

_Winifred B. Love_
Notary Public

My Commission Expires

_Nov. 28, 2010_

WINIFRED B. LOVE
Notary Public - Notary Seal
State of Missouri
St. Louis County
My Commission Expires Nov. 28, 2010
Commission # 06392882

2

File#:6305711

RECORDATION REQUESTED BY:
Continental Community Bank
and Trust Company
2430 W. Indian Trail
Aurora, IL 60506-1568

WHEN RECORDED MAIL TO:
Continental Community Bank
and Trust Company
2430 W. Indian Trail
Aurora, IL 60506-1568

**COPY**



**FOR RECORDER'S USE ONLY**

This Modification of Mortgage prepared by:

Josephine P. Anders, Sr. Documentation Specialist
Continental Community Bank & Trust Company
2430 W. Indian Trail
Aurora, IL 60506-1568

# MODIFICATION OF MORTGAGE

THIS MODIFICATION OF MORTGAGE dated June 14, 2002, is made and executed between **Chicago Title Land Trust Company, not personally but as successor Trustee to Chicago Title and Trust Company u/t/a September 1, 1990 and known as Trust Number 1095500, whose address is 171 N. Clark Street, 4th Floor, Chicago, IL 60601** (referred to below as "Grantor") and **Continental Community Bank and Trust Company, whose address is 2430 W. Indian Trail, Aurora, IL 60506-1568** (referred to below as "Lender").

**MORTGAGE.** Lender and Grantor have entered into a Mortgage dated June 14, 1996 (the "Mortgage") which has been recorded in Lake County, State of Illinois, as follows:

Recorded June 25, 1996 as Document Number 3342268.

**REAL PROPERTY DESCRIPTION.** The Mortgage covers the following described real property located in Lake County, State of Illinois:

LOT 75 IN ARBOR RIDGE SUBDIVISION, BEING A SUBDIVISION OF PART OF THE NORTHEAST 1/4, THE SOUTHEAST 1/4 AND THE SOUTHWEST 1/4 OF SECTION 7, TOWNSHIP 43 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN ACCORDING TO THE PLAT THEREOF RECORDED JULY 28, 1988 AS DOCUMENT NUMBER 2705749, IN LAKE COUNTY, ILLINOIS.

The Real Property or its address is commonly known as 1130 Windhaven Ct, Lake Forest, IL 60045. The Real Property tax identification number is 16-07-208-007-0000.

**MODIFICATION.** Lender and Grantor hereby modify the Mortgage as follows:

The definition of the indebtedness secured by said Mortgage shall be amended and restated as follows:

Indebtedness. The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitution for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses occurred by Lender to enforce Grantor's obligation under this Mortgage, together with interest on such amounts as provided in this

**MODIFICATION OF MORTGAGE**
(Continued)

Loan No: 4100000140

Page 2

Mortgage.

The definition of the Credit Agreement secured by said Mortgage shall be amended and restated as follows:

NOTE. The word "Note" means the Promissory Note dated June 14, 2002, in the original principal amount of $314,635.77 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The interest rate on the Note is 8.000%. Payments on the Note are to be made in accordance with the following payment schedule: in 59 regular payments of $2,308.79 each and one irregular last payment estimated at $301,432.20. Borrower's first payment is due September 14, 2002, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on August 14, 2007, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest.

CONTINUING VALIDITY. Except as expressly modified above, the terms of the original Mortgage shall remain unchanged and in full force and effect and are legally valid, binding and enforceable in accordance with their respective terms. Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Mortgage as changed above nor obligate Lender to make any future modifications. Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Mortgage (the "Note"). It is the intention of Lender to retain as liable all parties to the Mortgage and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification. If any person who signed the original Mortgage does not sign this Modification, then all persons signing below acknowledge that this Modification is given conditionally, based on the representation to Lender that the non-signing person consents to the changes and provisions of this Modification or otherwise will not be released by it. This waiver applies not only to any initial extension or modification, but also to all such subsequent actions.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF MORTGAGE AND GRANTOR AGREES TO ITS TERMS. THIS MODIFICATION OF MORTGAGE IS DATED JUNE 14, 2002.

GRANTOR:

CHICAGO TITLE LAND TRUST COMPANY, SUCCESSOR TRUSTEE TO CHICAGO TITLE AND TRUST COMPANY U/T/A SEPTEMBER 1, 1998 AND KNOWN AS TRUST NUMBER 1095660

By: _____

Authorized Signer for Chicago Title and Trust Company, successor Trustee to Chicago Title and Trust Company u/t/a September 1, 1998 and known as Trust Number 1095660

LENDER:

X _____
Authorized Signer

File#: 6305711

| | MODIFICATION OF MORTGAGE | |
|---|---|---|
| Loan No: 4100000140 | (Continued) | Page 3 |

---

## TRUST ACKNOWLEDGMENT

STATE OF _____ *IL* _____      )

                        ) SS

COUNTY OF _____ *Cook* _____      )

On this __ *3rd* __ day of __ *October* __, __ *2002* __ before me, the undersigned Notary Public, personally appeared ~~ ~~ ~~

---

, and known to me to be (an) authorized trustee(s) or agent(s) of the trust that executed the  and acknowledged the  to be the free and voluntary act and deed of the trust, by authority set forth in the trust documents or, by authority of statute, for the uses and purposes therein mentioned, and on oath stated that he or she/they is/are authorized to execute this  and in fact executed the  on behalf of the trust.

By _____        Residing at _____

Notary Public in and for the State of _____ *IL* _____

My commission expires _____

"OFFICIAL SEAL"
LYNDA S. BARRIE
Notary Public, State of Illinois
My Commission Expires 4/27/06

---

## MODIFICATION OF MORTGAGE
### (Continued)

Loan No: 4100000140                                                                 **Page 4**

---

## LENDER ACKNOWLEDGMENT

STATE OF _____                    )
                                                             ) SS
COUNTY OF _____                   )

On this _____ day of _____, _____ before me, the undersigned Notary Public, personally appeared _____ and known to me to be the _____ _____, authorized agent for the Lender that executed the within and foregoing instrument and acknowledged said instrument to be the free and voluntary act and deed of the said Lender, duly authorized by the Lender through its board of directors or otherwise, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this said instrument and that the seal affixed is the corporate seal of said Lender.

By_____          Residing at _____

Notary Public in and for the State of _____

My commission expires _____

---

04-08-1998                  MODIFICATION OF MORTGAGE                    **Page 3**
                                    (Continued)

## LENDER ACKNOWLEDGMENT

STATE OF ___ILLINOIS_____ )
                                           ) ss
COUNTY OF ____COOK_____ )

On this 8th_____ day of _April___, 19 98__, before me, the undersigned Notary Public, personally
appeared Oscar A. Rodriguez_____ and known to me to be the ___Assistant Vice President__
authorized agent for the Lender that executed the within and foregoing instrument and acknowledged said
instrument to be the free and voluntary act and deed of the said Lender, duly authorized by the Lender through its
board of directors or otherwise, for the uses and purposes therein mentioned, and on oath stated that he or she is
authorized to execute this said instrument and that the seal affixed is the corporate seal of said Lender.

By _Marcia M. Schams_____  Residing at ___411 Madison St._____

Notary Public in and for the State of ___Illinois_____

My commission expires ___04/14/99_____

> "OFFICIAL SEAL"
> MARCIA M. SCHAMS
> Notary Public, State of Illinois
> My Commission Expires 04/14/99

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.24a (c) 1998 CFI ProServices, Inc.  All rights reserved.
[IL-G20] E3.24 F3.24 RANAGNOS.LN L1 OVL]

4122104